```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

PATRICIA RODRIGUEZ,

        **Plaintiff,**

    v.

THE CITY OF CHICAGO, CHICAGO       Case No. 08 C 2095
POLICE OFFICERS M. MALDONADO,
N. BARRY, C. TRAYNOR, JASON
WOLANSKI, STEFAN W. ZADURA,        Hon. Harry D. Leinenweber
G-A RESTAURANT, LLC, COLIN
COMER, and UNKNOWN G-A
RESTAURANT EMPLOYEES,

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion of Defendants City of Chicago and Chicago Police Officers Jason Wolanski and Stefan Zadura for summary judgment in their favor on Plaintiff's claims for unlawful seizure under 42 U.S.C. § 1983, indemnification under 745 ILCS 10/9-102, and intentional infliction of emotional distress and assault under Illinois state law. For the reasons stated herein, Defendants' motion is denied.

### I. BACKGROUND

This suit relates to the arrest and seizure of Plaintiff Patricia Rodriguez by Wolanski and Zadura following Plaintiff's ejection from Manor nightclubs in Chicago during the early morning hours of December 12, 2007. The following facts are taken from the

parties' Rule 56.1 Statements of Undisputed Facts but the Court notes at the outset that Defendants dispute much of Plaintiff's version of events.

Plaintiff went out to dinner with a friend on December 11, 2007, and she and her friend shared a bottle of wine with their meal. After dinner, at approximately 10:00 p.m., Plaintiff and her friend moved on to a work-related social event at a bar in Chicago where Plaintiff had two or three cocktails. Afterward, at approximately 11:45 p.m., Plaintiff and a few of her friends went to Manor, a Chicago nightclub that is also a Defendant in this action. Plaintiff testified at her deposition that she was feeling the effects of alcohol while at Manor and she would not have attempted to drive a car, but she was not drunk or stumbling.

Shortly after Plaintiff arrived at Manor, a group of Manor employees escorted Plaintiff outside for failing to pay for a drink, an accusation Plaintiff hotly disputed. At that point, both Plaintiff and a Manor employee called 9-1-1 and asked for police to respond. Police responded a short time later, including Defendants Wolanski and Zadura who were operating a police squadrol that night. Plaintiff was arrested for disorderly conduct, handcuffed, and placed in the back of Wolanski and Zadura's police squadrol alone.

While in the squadrol, Plaintiff managed to remove her hands from the handcuffs and pounded on the rear door of the squadrol in order to get the attention of the police. Plaintiff claims that a police officer standing outside the squadrol, who Plaintiff described

at her deposition as approximately 6'2" or 6'3" with light brown hair, light features, and a thin build, apparently heard Plaintiff and opened the squadrol's rear door. This officer handcuffed Plaintiff's hands behind her back and secured her to a restraint bar in the squadrol. After handcuffing her in this manner, according to Plaintiff, the officer leaned in toward her and whispered in her ear, "It's going to be hard for you to swim with your hands behind your back." At the time the officer spoke, Plaintiff did not know what he meant by this remark and responded, "What?" The officer then shut the rear door and the squadrol, operated by Zadura and Wolanski, left Manor at approximately 12:06 a.m. on December 12, 2007, with Plaintiff as its lone detainee.

After Plaintiff's arrest, Officers Wolanski and Zadura transported her in the squadrol from Manor to the 18th District police station. The processing of Plaintiff at the 18th District was completed at approximately 12:45 a.m. on December 12, 2007, and Plaintiff was placed back into Wolanski and Zadura's squadrol. The officers subsequently transported Plaintiff to the 19th District police station where there is a female lockup facility. Plaintiff arrived at the 19th District at approximately 1:45 - 1:55 a.m.

Plaintiff maintains that at some point after she was arrested but before she arrived at the 19th District the officers drove the squadrol to the shore of Lake Michigan. When the squadrol reached the lake, Plaintiff claims she heard waves crashing and then the same officer who had threatened her earlier opened the rear door of the

squadrol and stood by silently for several minutes so that Plaintiff could see the crashing waves. According to Plaintiff, it then became crystal clear what the officer's earlier statement meant: that he was going to kill Plaintiff by throwing her into the lake with her hands cuffed behind her back. Plaintiff testified at her deposition that she became terrified, urinated in her clothing, and began screaming, crying, and begging the officer to spare her life.

Plaintiff did not identify the police officer who she claims threatened her and opened the squadrol door in her complaint or at her December 5, 2008, deposition. During her deposition, Plaintiff consistently described the officer as 6'2" to 6'3" in height, with light brown or blond hair, light features and a thin build. She also testified at her deposition that she believed she could identify the officer in a photo array. Plaintiff viewed a photo array on March 13, 2009, and failed to identify Wolanski or Zadura as the officer who threatened her and instead identified a third person who apparently was not involved in the underlying events. Plaintiff submitted an affidavit with her response to the pending motion stating that she observed Wolanski at his deposition, which occurred after the photo array, on May 7, 2009, and is now able to identify him as the threatening officer.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir., 2000). In ruling on a summary judgment motion, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372 (2007). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 599 (7th Cir., 2000).

### B. Section 1983 Claim

#### *1. Identification Issue*

Defendants argue that they are entitled to summary judgment on Plaintiff's § 1983 claim because Plaintiff cannot specifically attribute any of the allegations in her complaint to either Wolanski or Zadura. Section 1983 liability requires personal involvement in the constitutional wrongdoing. *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir., 2008). "[A]n official satisfies the personal

responsibility requirement of Section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir., 1995) (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir., 1985). In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir., 1988).

Defendants further argue that Plaintiff's recent affidavit, in which she identifies Wolanski as the threatening officer, conflicts with her deposition testimony and her misidentification at the photo array so the Court should disregard it as a sham. An affidavit that conflicts with the affiant's prior testimony is only allowed for limited purposes, *e.g.,* to clarify ambiguous deposition testimony or to alert the court to newly discovered evidence. *Adelman-Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517, 520 (7th Cir., 1988).

Plaintiff's affidavit does not conflict with her deposition testimony. Plaintiff did not testify at her deposition that an officer other than Wolanski threatened her, she merely did not know the threatening officer's name. Nonetheless, she consistently described him as 6'2" or 6'3" in height, with light brown or blond hair, light features and a thin build. The jury can draw its own conclusion whether Wolanski fits this description or whether Plaintiff's identification of him is credible.

Nor does Plaintiff's single misidentification at the photo array warrant summary judgment. In *Miller v. Smith*, 220 F.3d 491 (7th Cir., 2000), plaintiff sued several Indiana State Troopers for beating him at a gas station. The plaintiff in *Miller* could not specifically identify the officers who struck him but he could identify the officers present at the beating. The Seventh Circuit found that the plaintiff's inability to identify the striking officers was not fatal to his claim because a defendant's direct participation in the constitutional deprivation is not required for § 1983 liability. *Miller*, 220 F.3d at 495. A police officer who has a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights but fails to do so may be held liable under § 1983. *Id*. Thus, the court reasoned in *Miller*, the plaintiff's failure to distinguish the striking officers from the officers who were merely present did not defeat his claim because even the officers who were merely present could be held liable under § 1983 for failing to prevent the blows inflicted by other officers. *Id.*

Here, Defendants admit that Wolanski and Zadura operated the squadrol that transported Plaintiff on the night in question so there is no question that they were present during the relevant events. Even if Plaintiff could not identify the threatening officer, and she claims that she can, her § 1983 claim still survives summary judgment because a reasonable factfinder could find Wolanski and Zadura liable under § 1983 for standing by and doing nothing to prevent the

violation of Plaintiff's rights.  For these reasons, Plaintiff's misidentification at the photo array does not defeat her claim and the Court will consider Plaintiff's affidavit in ruling on the pending motion for summary judgment.

### *2. Unlawful Seizure*

Plaintiff does not challenge the legality of her arrest. Rather, she claims that the manner in which Wolanski and Zadura detained and transported her, specifically Wolanski's threat combined with the travel to the lakefront, constituted a violation of her constitutional rights.  The Fourth Amendment protects individuals from unreasonable seizure. *California v. Hodari D.*, 499 U.S. 621, 624 (1991).  The law is clear that "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *United States v. Jacobsen*, 466 U.S. 109 (1984)); *Arias v. Allegretti*, No. 05-5940, 2008 WL 191185 (N.D.Ill., Jan. 22, 2008).  The reasonableness of a seizure under the Fourth Amendment turns on whether it was objectively reasonable, judged from the perspective of a reasonable officer on the scene.  *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir., 2009) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The Court acknowledges that "[t]he police cannot have the specter of a § 1983 suit hanging over their heads" when they are performing their duties.  *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir., 1996).  Nonetheless, where "the facts draw into question the

- 8 -

objective reasonableness of the police action under the alleged circumstances," the court should deny summary judgment to allow for the further development of disputed facts regarding the officers' conduct. *Id.*

Here, Plaintiff maintains that Wolanski told her "it's going to be hard for you to swim with your hands behind your back," that Wolanski and Zadura subsequently drove the squadrol to the lakefront, and that Wolanski opened the squadrol's rear door at the lake so that Plaintiff could see the crashing waves while she was handcuffed and alone in the back of the squadrol in the middle of the night. A reasonable jury could conclude that Plaintiff's testimony is credible, that the combination of these acts constituted a threat on Plaintiff's life, and that the officers' actions were unreasonable. Accordingly, summary judgment on Plaintiff's unlawful seizure claim is denied.

### *3. Qualified Immunity*

Defendants Wolanski and Zadura invoke qualified immunity as barring Plaintiff's § 1983 claim against them. Notably, Wolanski and Zadura do not argue that even if Plaintiff's allegations are true they are entitled to qualified immunity because their conduct did not violate Plaintiff's clearly established rights. Instead, Wolanski and Zadura base their qualified immunity argument on Plaintiff's failure to identify them in the June 2009 photo array and argue that her § 1983 claim must fail because § 1983 liability must be based on

personal participation and Plaintiff cannot identify the officer who threatened her.

As discussed above, § 1983 liability can be based on a defendant's indirect participation in the constitutional violation. *See Miller*, 220 F.3d at 495. Plaintiff has identified the two officers who commanded the squadrol during the relevant events and a reasonable factfinder could conclude that, even if those officers did not threaten her, they are liable under § 1983 for standing by and doing nothing while another officer did. Accordingly, Officers Wolanski and Zadura are not entitled to qualified immunity at this stage of the litigation.

### C. State Law Claims

#### *1. Intentional Infliction of Emotional Distress*

Plaintiff also brings a claim against Defendants Wolanski and Zadura for intentional infliction of emotion distress and Defendants have moved for summary judgment in their favor on this claim. To prove a claim for intentional infliction of emotional distress, a plaintiff must establish the following elements:

(1) defendant's conduct was extreme and outrageous,

(2) defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so, and

(3) defendant's conduct actually caused severe emotional distress.

*Thomas v. Fuerst*, 803 N.E.2d 619, 625 (Ill.App.Ct., 2004).

Whether a defendant's conduct is extreme and outrageous is evaluated on an objective standard based on all the facts and circumstances. *Id.* at 625. Liability attaches only where defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* The extreme and outrageous character of the conduct may arise from defendant's abuse of position or a relationship between plaintiff and defendant that gives defendant actual or apparent authority over plaintiff or the power to affect plaintiff's interests. *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 211 (Ill., 1992). Further, the distress inflicted must be so severe that no reasonable person could be expected to endure it. *Thomas*, 803 N.E.2d at 625.

Plaintiff's claim for intentional infliction of emotional distress survives summary judgment. First, Wolanski and Zadura's alleged conduct is extreme and outrageous, especially considering the position of authority they held over Plaintiff while she was under arrest and handcuffed. Second, the threat made by the officer in the squadrol, the travel to the lakefront, and the opening of the squadrol doors at the lakefront had no purpose other than to frighten Plaintiff, so the Court will infer that was the officers' intent. Finally, Plaintiff has presented sufficient evidence that she actually suffered emotional distress, both during the events in question and afterward. When she saw the crashing waves at the lakefront, Plaintiff testified, she became terrified, urinated in her clothing, and pleaded with the officer to spare her life. She

testified that since her arrest she has suffered fear, anxiety, stress, sadness, embarrassment, humiliation, anger and frustration, and that she now has a general distrust of police officers. Accordingly, summary judgment on this claim is denied.

### 2. Assault

Defendants have also moved for summary judgment in their favor on Plaintiff's state law assault claim. An assault requires (1) a threatening gesture, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an imminent battery. *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir., 2004) (citing *Merheb v. Illinois State Toll Highway Auth.*, 267 F.3d 710, 714 (7th Cir., 2001)).

A reasonable jury could find that Wolanski's otherwise innocent remark, "it's going to be hard for you to swim with your hands behind your back," combined with the travel to the lakefront and the opening of the rear squadrol door at the lake, created in Plaintiff a reasonable apprehension of an imminent battery, *i.e.,* being thrown in the lake. Accordingly, Defendants' motion for summary judgment is denied with respect to Plaintiff's assault claim.

### 3. Indemnification

Plaintiff pursues an indemnification claim against the City under 745 ILCS 10/9-102. Under that statute, a local public entity is directed to pay any tort judgment for compensatory damages for which its employee is liable due to actions taken within the scope of employment. The City moved for summary judgment on the

indemnification claim on the grounds that, for the reasons stated in Defendants' Motion for Summary Judgment, Wolanski and Zadura cannot be found liable for any of Plaintiff's claims. Since Plaintiff's underlying claims against Wolanski and Zadura survive, Plaintiff's claim against the City for indemnification survives as well.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** December 9, 2009